UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 12-20229-CIV-SEITZ/SIMONTON

PALMAT INTERNATIONAL, INC., and
ROBERTO WELLISCH,

    Petitioners,

v.

ERIC H. HOLDER, Attorney General
of the United States of America,

    Respondent.
_____/

## ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

THIS MATTER is before the Court on Respondent Eric H. Holder's Motion to Dismiss Petitioners' Petition for Writ of Mandamus, Declaratory Judgment, and Violation of Administrative Procedure Act [DE-27]. This case concerns a request by the government of Argentina for the bank account records of Petitioners, Palmat International, Inc. and Roberto Wellisch, Palmat's majority shareholder. The request, made pursuant to a Mutual Legal Assistance Treaty between Argentina and the United States, concerns Petitioners' accounts at Regions Bank. Petitioners allege that the release of this information will violate their interest in avoiding the disclosure of confidential information and maintaining their personal affairs private pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution. Petitioners seek injunctive and declaratory relief under the Writ of Mandamus, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. The effect of this relief would be to impede the execution of Argentina's request for the bank records. The Government moved to dismiss for failure to state a claim and lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil

Procedure. Based on a review of the motion to dismiss, Petitioners' response [DE-28], the Government's reply [DE-33], as well as the record and the applicable law, this case is dismissed with prejudice because Petitioners do not have a cognizable constitutional right under the Fifth Amendment over financial records held by a third-party bank.

## I.     Factual Background

The following facts are taken from the Petition unless otherwise noted. Palmat is a Florida corporation with its principal place of business in Florida. Wellisch is a foreign investor and Palmat's majority stockholder. In 2010, Argentina's Ministry of Foreign Affairs issued several requests to the U.S. Department of Justice for the production of Petitioners' financial records for bank accounts held in the United States. The requests were made as part of an ongoing criminal investigation stemming from allegations that Palmat, along with other companies, paid bribes to Argentine government officials in connection with the sale of agricultural equipment to the Venezuelan government. Argentina requested the financial records under the U.S.-Argentina Treaty on Mutual Legal Assistance in Criminal Matters between Argentina and the United States, signed on December 4, 1990.[1] *See* Treaty Between the Government of the United States of America and the Government of the Republic of Argentina on Mutual Legal Assistance in Criminal Matters, Signed at Buenos Aires on Dec. 4, 1990, S.

---

[1] Mutual assistance treaties such as the MLAT at issue here have become increasingly common in recent decades as a tool to facilitate legal proceedings involving foreign parties or evidence. Generally, these agreements "provide for bilateral, mutual assistance in the gathering of legal evidence for use by the requesting state in criminal investigations and proceedings." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 564 (9th Cir. 2011).

2

Treaty Doc. No. 102-18 (1991) (hereinafter "MLAT").[2]

According to Petitioners, the Attorney General rejected Argentina's initial request on the grounds that "it was not specific as to the crime presumptively being investigated and did not state how the production of the requested documents would advance the criminal investigation taking place in Argentina." Pet., ¶ 13. Thereafter, a federal district court appointed an Assistant United States Attorney as commissioner to assist in obtaining the requested documents. The commissioner issued a subpoena to Regions Bank, demanding the production of Palmat's and Wellisch's bank account records. Petitioners assert that the Government has not yet provided these documents to Argentina. On the face of the Petition, however, it is unclear whether the subpoenaed documents have been produced to the Government or remain with Regions Bank.

Petitioners filed a three-count petition seeking injunctive and declaratory relief under the Writ of Mandamus, 28 U.S.C. § 1361 (Count I), the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (Count II), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (Count III). Petitioners claim that the Government's execution of Argentina's requests – here, the production of financial records to the government of Argentina as part of an on-going criminal investigation

---

[2] Pursuant to the Article I of the MLAT, each country is obligated to give assistance, including "providing documents, records, and articles," in connection with ongoing criminal investigations and proceedings in the requesting state. MLAT, Art. I, § 2.a. Article I provides that the treaty "is intended solely for mutual legal assistance between the Parties" and "shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request." *Id.*, Art. I, § 4. The Attorney General of the United States, "or the persons designated by him," is the Central Authority responsible for making and receiving requests pursuant to the Treaty. *Id.*, Art. II, § 2. The Attorney General may, pursuant to 18 U.S.C. § 3512, ask a district court to "issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses." 18 U.S.C. § 3512(a)(1). In exercising this authority, a district court may appoint a person "to direct...the production of documents," including by issuing orders "requiring the appearance of a person, or the production of documents or other things, or both." 18 U.S.C. § 3512(b)(1), (2).

– would violate Petitioners' constitutional interests in the bank records under the Fifth and Fourteenth Amendments of the U.S. Constitution. Specifically, Petitioners contend that the records, if released, will be made available to the public. Petitioners assert that "the Government of Argentina has made public all the information that it has been able to compile regarding Petitioners," and that it "will most likely make public any bank record" obtained pursuant to the MLAT subpoena issued to Regions Bank. *Id.*, ¶ 15. Petitioners further allege that several news outlets in Argentina have published articles disclosing details about the bank accounts, including correspondence between the United States and Argentina concerning the MLAT request for the bank information, as well as documents showing Petitioners' "account numbers and routing codes." *Id.*, ¶ 17.

Petitioners claim that as a result of these public disclosures, their constitutionally protected rights to the confidentiality of their bank records has been and will continue to be violated. In addition, Petitioners allege that they have become the targets of "potential criminal activities, including the possibility of kidnapping, blackmail, and extortion," including, in one instance, the kidnaping and murder of Wellisch's "close family relatives." *Id.*, ¶ 18.

## II. Legal Standard

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint. The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted. It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

4

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff. *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, once a court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555. However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

### III.   Analysis

The Government raises several arguments in support of dismissing the case.[3] The first is that Petitioners cannot state a claim under the MLAT because, by its express terms, the treaty forecloses a private party's right to a cause of action under the treaty. Mot., at 5; 7-9; *see also* MLAT, Art. I, § 4. Second, the Government contends that Petitioners' mandamus, declaratory, and APA-based claims are barred by the doctrine of sovereign immunity, and that Petitioners fail to identify a valid waiver of immunity. More specifically, the Government asserts that the Court lacks subject matter jurisdiction because: (1) Petitioners fail to identify a "clear right to relief" as required to obtain mandamus relief; (2) the Declaratory Judgment Act does not provide an independent basis for the Court's jurisdiction; and (3) judicial review under the APA is precluded

---

[3] The Government's motion also requests that the Court deny Petitioners' Verified Emergency Motion for Preliminary Injunction [DE-5]. Because the Court has already denied this motion [*see* DE-30], there is no need to address it here.

by the MLAT's terms, and impliedly barred because Petitioners' claims relate to matters of foreign affairs, which the Constitution has entrusted to the political branches of government.

In response, Petitioners assert that the Court has jurisdiction to determine questions regarding the constitutionality of the Government's actions taken pursuant to a treaty such as the MLAT. Additionally, they contend that the claims at issue in this case arise not under the MLAT – which Petitioners acknowledge forecloses a private party's cause of action – but rather under the Fifth and Fourteenth Amendment's protection of an individual's interests in avoiding the disclosure of personal matters.[4] For the reasons set forth below, the Court agrees with Petitioner's first argument, but holds that the Constitution of the United States does not protect Petitioners' interests in maintaining the confidentiality of financial records held by Regions Bank, a third party to this case. Accordingly, Petitioners fail to state a claim for which can be granted.

A.      **The Court has Jurisdiction to Entertain Petitioners' Constitutional Claims**.

The Government spends unnecessary paper on the argument that Petitioners cannot state a claim under the MLAT because, as Petitioners acknowledge, there is no private right of enforcement of the treaty. *See, e.g.,* Mot., at 4-9. Moreover, the instant petition does not allege a violation of the MLAT as the basis for its claims. Rather, each count is premised on the alleged violation of Petitioners' constitutional right of privacy over their bank account information. *See* Pet., ¶¶ 29, 37, 47. As the Supreme Court has observed, treaty obligations are "subject ... to the Constitution's guarantees of individual rights." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 417, n. 9 (2003); *see also In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d

---

[4] As a threshold matter, Petitioners fail to state a claim under the Fourteenth Amendment. "By its terms, the Fourteenth Amendment only applies to state action." *Quiles v. Vitt*, 2010 WL 5559507, 6 (M.D. Pa. 2010). Because this case is limited to the actions of the United States Justice Department, a part of the federal government, the Fourteenth Amendment is inapplicable.

557, 571 (9th Cir. 2011) ("Treaties, like statutes, are subject to constitutional limits, including the separation of powers and the guarantee of due process."). Therefore, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over a claim that a treaty obligation does not comport with a constitutional guarantee. *See In re Request from United Kingdom*, 685 F.3d 1, 15 (1st Cir. 2012) (exercising jurisdiction under 28 U.S.C. § 1331 to review an allegation that the petitioners' First Amendment rights would be violated based on a subpoena issued pursuant to an MLAT).

### B. Petitioner's Alleged Constitutional Violation Fails to State a Claim.

The Government argues that the Petition should be dismissed because Petitioners fail to state a valid liberty interest in their bank records. The Supreme Court has recognized a constitutional interest "in avoiding disclosure of personal matters." *Burns v. Warden, USP Beaumont*, 482 Fed. Appx. 414, 417 (11th Cir. 2012) (*quoting Whalen v. Roe*, 429 U.S. 589, 599 (1977)).[5] The right to privacy encompasses two distinct interests: (1) the individual interest in avoiding disclosure of personal matters; and (2) the interest in independence in making certain kinds of important decisions."[6] *Whalen*, 429 U.S. at 598–600. This constitutional right is narrowly construed and is limited to rights which are "fundamental" or "implicit in the concept of ordered liberty." *Paul v. Davis*, 424 U.S. 693, 713 (1976). The Fifth Circuit Court of Appeals has held that "[f]inancial privacy does not fall" within the autonomy strand of the right to

---

[5] It is unclear whether the right to informational privacy extends to corporations. *See U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy"); *F.D.I.C. v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) ("[C]orporations possess much weaker privacy interests than individuals") (citations omitted). However, because the bank records at issue in this case are not subject to constitutional protection as a matter of law, the Court leaves this question for another day.

[6] These two distinct strands have been referred to as the "confidentiality strand" and the "autonomy strand." *See Plante v. Gonzalez*, 575 F.2d 1119, 1128 (5th Cir. 1978) (internal citations omitted).

privacy. *Plante*, 575 F.2d at 1132.⁷ Petitioners' case rests on the allegation that the release of the bank records will violate their constitutional right "in maintaining their personal affairs private." *See, e.g.,* Pet., ¶ 29. Moreover, Petitioners make no claim that the release of their records implicate any autonomy interests. Therefore, only the right of confidentiality strand is at issue here.

The alleged facts do not plausibly establish a violation of Petitioners' right to confidentiality over financial records held by Regions Bank. The survival of Petitioners' claims hinges on whether a constitutional right of privacy exists over financial records. Long ago, the Fifth Circuit Court of Appeals determined that the privacy of personal financial information falls directly within the scope of this "right to confidentiality." *Plante*, 575 F.2d at 1132. That case concerned a lawsuit filed by a group of Florida state senators challenging an amendment to the state constitution requiring public officials to file sworn statements disclosing their net worth, assets, and liabilities. *See id.,* at 1122-23. While recognizing that the senators had a protected right of privacy against disclosing financial information, the court of appeals concluded that this right was outweighed by the state's interest in the public disclosure of its representatives' assets, and held the amendment to be constitutional *See id.,* at 1136.⁸

Neither the Parties nor the Court has found a case addressing the issue of whether the "right of confidentiality" strand applies to financial records held by a third party. However, in *U.S. v. Miller*, 425 U.S. 435 (1976), the Supreme Court held, in the context of the Fourth Amendment, that a bank customer has no protected interest in the copies of checks and other

---

⁷ In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir.1981).

⁸ Unlike the case at bar, *Plante* does not directly apply to circumstances in which bank records are obtained from a third party – in this case, Regions Bank.

8

records retained by his bank, and therefore could not assert a challenge to a grand jury subpoena to the bank for those records. *Id.* at 440-43, 96. The Court determined that bank records are not the account holder's private papers but rather "the business records of the banks," in which a customer "can assert neither ownership nor possession."[9] *Id.* at 440; *see also U.S. v. Ghidoni*, 732 F.2d 814, 817 (11th Cir. 1984) (holding that bank records held by a third-party bank were not "eligible for protection under the Fifth Amendment," and concluding, under *Miller*, that "[i]t is well-established that bank records are not protected from disclosure by *any* constitutional privilege.") (emphasis added); *Oxford Charter Corp. v. U.S., Dept. of Treasury*, 1993 WL 268507, *3 (M.D. Fla., Apr. 23, 1993) ("It is well-settled that a person has no legitimate expectation of privacy in the contents of records voluntarily conveyed to a third party. This principle includes records held by a bank...."). Based on the foregoing authority, no constitutionally protected privacy interest exists for Petitioners' bank account records held by Regions Bank.

---

[9] To the extent Right to Financial Privacy Act, 12 U.S.C. § 3401, *et seq.*, recognizes an individual's right of privacy over her bank account records, these rights are not of a constitutional dimension. As explained by the Fifth Circuit in *United States v. Kington*, 801 F. 2d 733 (5th Cir. 1986):

> The Right to Financial Privacy Act "is a congressional response" to [Miller's] holding, for "it is clear that Congress may provide protection of individual rights beyond that afforded in the Constitution." H.Rep. No. 1383, 95th Cong., 2nd Sess. 7, reprinted in 1978 U.S.Code Cong. & Ad.News 9273, 9306. While it is evident that Congress has expanded individuals' right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions. *The rights created by Congress are statutory, not constitutional.*

*Id.* at 737 (emphasis added); *see also U.S. v. Cormier*, 220 F. 3d 1103, 1108 (9th Cir. 2000) ("The key factor" that led to the Supreme Court in *Miller* determining that a person does not have a reasonable expectation of privacy in bank records "is that a person does not possess a reasonable expectation of privacy in an item in which he has no possessory or ownership interest."). Nothing in the Right to Financial Privacy Act creates in a depositor a possessory or ownership interest in bank records.

Moreover, even assuming that such an interest exists, it is outweighed by the United States' compelling interests in fulfilling its treaty obligations. "[T]he constitutionality of [government action] alleged to have violated this right to confidentiality must be determined by use of a balancing test comparing the interests the action serves with those it hinders." *Hester v. City of Milledgeville*, 777 F.2d 1492, 1497 (11th Cir. 1985) (internal quotations and citations omitted). Petitioners allege that the Government's compliance with the MLAT request will violate their constitutional rights because the judge overseeing the investigation of Palmat in Argentina has made public all information about Petitioners received from the United States. Petitioners believe that the previous disclosure of this information has already led to the kidnaping and, in one case, the murder of Wellisch's relatives in Argentina, as these criminal activities took place after the information was made public. Resp., at 8.[10]

Ranged against this interest is the United States' interest in cooperating with foreign countries in criminal matters through the exchange of evidence. In ratifying the US-Argentina MLAT, Congress recognized that "mutual legal assistance treaties have become increasingly important tools in the United States' war on crime," in particular for transnational crimes that "require the close cooperation of law enforcement authorities throughout the world." S. Exec. Rep. No. 102-33, at 1; *see also In re Request from United Kingdom*, 685 F.3d at 18 (internal quotation omitted); *and In re Commissioner's Subpoenas*, 325 F. 3d 1287, 1290 (11th Cir. 2003), *overruled on other grounds by Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)

---

[10] Remarkably, apart from alleging that their bank account and routing information was released to the public, Petitioners provide no specifics as to the content of the "financial information" that has already been released in Argentina. In any event, assuming that this financial information concerns the same accounts at issue in this dispute, Petitioners' claim of constitutional violation fails to state a claim for the additional reason that the financial records have already been made part of the public record and are, by definition, no longer confidential. *See U.S. v. Posner*, 594 F. Supp. 930, 936 (S.D. Fla. 1984) (holding that "once certain information is in the public domain... the entitlement to privacy is lost.").

("MLATs...have the desired quality of compulsion as they contractually obligate the two countries to provide to each other evidence and other forms of assistance needed in criminal cases while streamlining and enhancing the effectiveness of the process for obtaining needed evidence.").

Notably, Petitioners do not complain that the Government's fulfillment of its treaty obligations violates their constitutional rights, but rather that the release of Petitioners' information to the public, by an Argentine judge in charge of an ongoing investigation in Argentina, may lead to future attacks against Petitioners by unidentified third parties. While any criminal acts against Petitioners and Petitioners' relatives are deplorable, Petitioners' speculation about the potential future commission of unlawful acts by third parties in a foreign country cannot outweigh the United State's compelling interest in complying with the MLAT.[11]

## IV. Conclusion

The Fifth Amendment of the United Constitution does not provide a cognizable right to of confidentiality for bank records held by a third party bank. Moreover, even if such a right exists, the United States' interests in fulfilling its obligations under a mutual assistance treaty far outweigh Petitioners' interests in keeping the records private. Petitioners fail to state a valid constitutional claim. Accordingly, it is

ORDERED THAT

1. Respondent's Motion to Dismiss Petitioners' Petition for Writ of Mandamus, Declaratory Judgment, and violation of Administrative Procedure Act [DE-27] is GRANTED.

---

[11] The Court is also unconvinced, based on these speculative assertions, that the financial information will be used in a foreign judicial proceeding that departs from the United States' "concepts of fundamental due process and fairness" to justify an injunction preventing the government from fulfilling its treaty obligations. *In re Premises*, 634 F.3d 557, 572 (9th Cir. 2011).

  2. This case is DISMISSED WITH PREJUDICE for failure to state a claim for which relief can be granted.

  3. All pending motions not otherwise ruled upon are DENIED as MOOT.

  4. This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 14th day of February, 2013.

             _____
             PATRICIA A. SEITZ
             UNITED STATES DISTRICT JUDGE

cc: Counsel of Record